## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
## CIVIL ACTION NO. 1:17-cv-00826

| | | |
|---|---|---|
| Craven Randall Casper, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **BRIEF IN SUPPORT OF** |
| | ) | **DEFENDANTS' RULE 12(B)(6)** |
| COMCAST Corporation, | ) | **MOTION TO DISMISS** |
| NBCUniversal Media, LLC, and Lorne | ) | |
| Michaels, | ) | |
| | ) | |
| Defendants. | ) | |

Defendants Comcast Corporation ("Comcast"), NBCUniversal Media, LLC ("NBC"), and Lorne Michaels (collectively "Defendants"), by and through their undersigned counsel, respectfully submit this Brief in support of their Motion to Dismiss.

## I.     STATEMENT OF THE MATTER BEFORE THE COURT

Plaintiff filed the Complaint in this action, *pro se*, on September 15, 2017. The Complaint consists of 367 pages, and over 800 separately enumerated paragraphs – plus voluminous exhibits.

The Complaint purports to state claims for: (1) federal trademark infringement under 15 U.S.C. §§ 1114(1)(a) and 1125(a); (2) false designation of origin, passing off, and/or false advertising under 15 U.S.C. § 1125(a); (3) federal trademark dilution under 15 U.S.C. § 1125(c); (4)  unfair competition under 15 U.S.C. § 1125(a); (5) unjust enrichment; (6) common law trademark infringement; (7) common law unfair

competition; (8) violations of N.C. Gen. Stat. § 75-1.1, *et seq.*; (9) libel *per se*; and (10) intentional infliction of emotional distress. The Complaint also asserts standalone "claims" for: (1) expenses of litigation; (2) conditions precedent; and (3) demand for a jury trial. For the reasons stated below, the Complaint should be dismissed in its entirety.

## II.   STATEMENT OF RELEVANT FACTS

The far-ranging factual allegations in Plaintiff's voluminous and repetitive Complaint cannot be comprehensively summarized in the context of this brief, and for purposes of this motion the Complaint must ultimately speak for itself. However, the principal allegations can be boiled down to the following salient points:

**Plaintiff's Trademark:** Plaintiff is the owner of the trademark "RANDY CANDY" for use in connection with "T-Shirts; wearable garments and clothing, namely, shirts, in Class 25 (U.S. CLS. 22 and 39)." The trademark was registered with the USPTO on or about October 13, 2013 and assigned Registration No. 4418324. The validity of Plaintiff's "RANDY CANDY" trademark has not been contested. Plaintiff has designed and marketed several forms of apparel using the "Randy Candy" trademark and related artwork, including t-shirts and intimate apparel. In these uses, the "RANDY CANDY" mark appears in a bubble-script font, most often accompanied by an illustration of a young boy with short brown hair, a wide smile and a bowtie. See Compl. Ex. A.

**The *Saturday Night Live* Sketch:** On October 15, 2016, Defendant NBC, a wholly owned subsidiary of Defendant Comcast, broadcast a comedy sketch entitled

2

"Drive-Thru Window[1]" as part of that night's episode of the long-standing television program "*Saturday Night Live*" ("*SNL*"). The Executive Producer of *SNL* is Defendant Lorne Michaels. In the "Drive-Thru Window" sketch, a series of eccentric, oddly named, and outlandishly dressed characters are riding in a very long stretch limousine that pulls up to a Burger King restaurant and appear in succession at the drive-thru window to interact with the order-taker. One of the many characters in the sketch is introduced by another as "Randy Candy." The "Randy Candy" character is a full-grown, portly man, with bleach-blonde, shoulder-length hair with bangs, sunglasses, and a cartoonish pinstripe suit. He addresses the Burger King order-taker, stating: "I peddle whimsy," and they have a brief exchange about ordering "chicken fries." Plaintiff alleges that the Defendants portray the Randy Candy character as a "not normal" person. (See, e.g., Compl. ¶ 213.) The sketch moves on to other eccentric characters, ending with an appearance by the *SNL* show's musical guest for that episode, Bruno Mars, who says "make room, Randy Candy!" so that the Burger King order-taker can join the party in the limousine. In a final voice-over at the end of the sketch, unidentified person(s) in the limousine yell "We [or I] hate Randy Candy!"

---

[1] An authentic DVD copy of "Drive-Thru Window" is being provided to the Court in connection with this Motion pursuant to a Notice of Manual Filing ("NMF"). (Moles Dec. ¶¶ 3-4, ECF Doc. 22, Ex A; NMF, ECF Doc. #23.) The contents of "Drive-Thru Window" are incorporated by reference in, and integral to, the Complaint. A district court may consider documents "attached to the motion to dismiss, so long as they are integral to the complaint and authentic." Tessler v. NBC Universal, Inc., No. 2:08CV234, 2009 WL 866834, at *3 (E.D. Va. March 31, 2009).

3

**Plaintiff's grievances**:  Plaintiff alleges that his trademark interests were harmed by the naming of the Randy Candy character in the *SNL* "Drive-Thru Window" sketch and by association of his trademark with Burger King and its products. (<u>See</u>, <u>e.g.</u>, Compl. ¶ 249.)  A large portion of the Complaint discusses various allegedly harmful references to "Randy Candy" in social media postings by third parties and by Defendants following the broadcast of the October 15, 2016 *SNL* episode, primarily on YouTube.com, Twitter.com, Giphy.com and Facebook.com. (<u>See</u>, <u>e.g.</u>, Compl. ¶¶ 175, 179, 199, 445.) He contends that certain of those postings were homophobic and consisted of hate speech, while others evidence consumer confusion between the *SNL* Randy Candy character and his "RANDY CANDY" trademark. (<u>See</u>, <u>e.g.</u>, Compl. ¶¶ 120, 171, 175.) The Complaint further describes how it may be possible for internet users to customize apparel using the name "Randy Candy" on the NBC Store's website, although he does not allege that Defendants affirmatively offered any such products through any outlet. (<u>See</u> Compl. ¶¶ 286-291.)  Woven throughout the Complaint are repeated references to Plaintiff's correspondence with an NBC in-house attorney, Marni Beck Pedorella, regarding his claims relating to the use of the character name "Randy Candy," which were not addressed to Plaintiff's satisfaction. (<u>See</u>, <u>e.g.</u>, Compl. ¶¶ 90, 128.)

## III.    <u>LEGAL STANDARD</u>

A pleading should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure if it does not allege "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007); <u>see also</u> <u>Ashcroft v.</u>

4

Iqbal, 556 U.S. 662, 697 (2009).  The pleading must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" or allegations of speculative facts. Iqbal, 556 U.S. at 678; see also Twombly, 550 U.S. at 555.  Moreover, the facts alleged must create a "legally recognizable right of action."  Id. ("pleading must contain something more…than…a statement of facts that merely creates a suspicion [of] a legally cognizable right of action").  The failure of a Complaint to meet these standards warrants dismissal.  Id.

## IV.  ARGUMENT

The Complaint should be dismissed pursuant to Rule 12(b)(6) for two reasons. First, the Complaint fails to comply with Rule 8(a)(2) of the Federal Rules of Civil Procedure, in that it is not "short" or "plain"  and instead consists of rambling allegations to which Defendants would struggle to respond.  And, second, as a matter of substance, the facts alleged in the Complaint do not give rise to a valid claim under either the Lanham Act or North Carolina law.

### A.  The Complaint Should be Dismissed Pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure

Lengthy pleadings that offer confusing factual narratives and conclusory statements of law place an unjustified burden on the court and any party who must respond. Cook v. Unisys Fed. Gov't Grp., No. 7:14-CV-00579, 2015 WL 5690976, at *3 (W.D. Va. Sept. 28, 2015).  Accordingly, such complaints – which "fail to comply with Rule 8's pleading requirements" -- may be dismissed pursuant to Rule 12(b)(6). Id.  See

5

also North Carolina v. McGuirt, 114 Fed. App'x. 555, 559-60 (4th Cir. 2004) (affirming dismissal under Rule 12(b)(6) of complaint containing 113 counts across 79 pages for Rule 8 violations); Mangan v. Weinberger, 848 F.2d 909, 911 (8th Cir. 1988) (affirming dismissal of complaints of 432 pages and 622 pages with 1793 and over 1800 paragraphs respectively for violations of Rule 8); Nevijel v. North Coast Life Ins. Co., 651 F.2d 671, 674 (9th Cir. 1981) (affirming dismissal of "verbose, confusing and almost entirely conclusory" complaint consisting of 48 pages with 14 pages of addenda and 9 pages of exhibits for Rule 8 violations); Wenger v. Lumisys, Inc., 2 F.Supp.2d 1231, 1243 (N.D.Cal.1998) (dismissing a complaint that "requir[ed] a laborious deconstruction and reconstruction of a great web of scattered, vague, redundant, and often irrelevant allegations" for failure to comply with Rule 8).

Here, the Complaint spans 367 pages, consists of more than 800 separately enumerated paragraphs, and includes an additional 78 pages of exhibits. (ECF Doc. #1) The Complaint includes a twenty-page prayer for relief which includes various requests for a broad injunction, forensic accounting, the initiation of criminal prosecution against Defendants, and allowing expedited discovery. (Compl. pp. 355-365.)  Aside from its length, the Complaint meanders through a variety of topics unrelated to any cognizable legal theory for trademark infringement including: (1) assorted references to non-parties such as Burger King, Bruno Mars, Frito-Lay and the Coca-Cola Company (See, e.g., Compl., ¶¶ 148, 172, 186); (2) rhetorical questions about matters unrelated to Plaintiffs' claims (See, e.g., Compl. ¶¶ 157, 174, 184, 192, 194, 243.); and (3) careless allegations

6

of Defendants engaging in illicit drug use, homophobia, and hate speech.[2] (See, e.g., Compl. ¶¶ 120, 171, 173-174, 184, 229.)  These sorts of rambling allegations make it impossible for Defendants to respond to the Complaint, run afoul of Rule 8(a)(2), and warrant dismissal of the Complaint pursuant to Rule 12(b)(6). See McGuirt, 114 Fed. App'x. at 559-60; Mangan, 848 F.2d at 911; Nevijel, 651 F.2d at 674; Wenger, 2 F.Supp.2d at 1243.

### B.  The Complaint Should Be Dismissed Because it Fails to State a Claim On Which Relief Can Be Granted

#### 1.  Plaintiff's Lanham Act Claims for Trademark Infringement, False Designation of Origin, and Unfair Competition Fail

In Counts I, II, and IV of the Complaint, Plaintiff asserts claims for trademark infringement under 15 U.S.C. §§ 1114(1) and 1125(a)(1)(A), false designation of origin under 15 U.S.C. § 1125(a)(1)(A), and unfair competition under 15 U.S.C. § 1125(a)(1)(A) (together, the "Infringement Claims").  To state any of these claims, a plaintiff must allege "(1) that it possesses a mark; (2) that the defendant used the mark; (3) that the defendant's use of the mark occurred 'in commerce'; (4) that the defendant used the mark 'in connection with the sale, offering for sale, distribution, or advertising of goods or services'; and (5) that the defendant used the mark in a manner likely to

---

[2] Defendants also question whether the Complaint complies with Rule 10(b)'s requirement that pleadings or defenses be set forth "in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).  Indeed, multiple sentences, and in some cases paragraphs, are contained within almost every numbered paragraph in the Complaint.  In many cases, a single numbered paragraph in the Complaint spans several pages.  Often, the information in these paragraphs is not limited to specific topics, let alone a single set of circumstances.

7

confuse consumers."  People for Ethical Treatment of Animals v. Doughney, 263 F.3d

359, 364 (4th Cir. 2001); Lamparello v. Falwell, 420 F.3d 309, 313 (4th Cir. 2005).[3]

By limiting the ability of speakers to use certain words and phrases, "trademark

protection . . . comes at a potential cost to free expression."  Radiance Found., Inc. v.

N.A.A.C.P., 786 F.3d 316, 321 (4th Cir. 2015).  An infringement claim therefore "does

not simply require that the alleged infringer used in commerce the mark that the

trademark holder possesses."  Id.  Rather, the fourth and fifth elements of the claim – use

of a mark "in connection with" goods and services and in a manner that is likely to

confuse consumers – serve "to reconcile the commercial values protected by the Lanham

Act and the democratic value of expressive freedom."  Id.  The Infringement Claims fail

because Plaintiff has not alleged, and cannot allege, those two crucial elements:  NBC did

not use the RANDY CANDY mark "in connection with" the sale of goods or services,

nor did it use the mark in a manner likely to confuse consumers.

### a.  Plaintiff Fails to Allege NBC's Use of "Randy Candy" in Connection With Goods or Services

In Radiance, the Fourth Circuit held that "the 'in connection with' language must

denote a *real nexus* with goods or services if the [Lanham] Act is not to fatally collide

with First Amendment principles."  Id. at 324.  Speech "'that does no more than propose

a commercial transaction' . . . falls within the Lanham Act's reach."  Id. at 323 (quoting

---

[3] Because Defendants do not dispute for purposes of this motion that Plaintiff has used
the RANDY CANDY mark in commerce, Plaintiff's trademark infringement and unfair
competition claims may be analyzed together. Cf. Belmora LLC v. Bayer Consumer Care
AG, 819 F.3d 697, 708 (4th Cir. 2016).

8

definition of "commercial speech" from <u>United States v. United Foods, Inc.</u>, 533 U.S. 405, 409 (2001)). Similarly, speech that qualifies as "commercial" under the factors set forth in <u>Bolger v. Youngs Drug Products Corp.</u>, 463 U.S. 60, 66-67 (1983), i.e. "whether the speech is an advertisement; whether the speech references a particular good or service, and whether the speaker (the alleged infringer) has a demonstrated economic motivation for his speech" falls within the Lanham Act. <u>Radiance</u>, 786 F.3d at 323. Finally, speech that employs the mark at issue "as a source identifier" of goods or services is a use "in connection with" those goods or services. <u>Id</u>.

"Drive-Thru Window" does none of these things.[4] It is a comedy sketch in which a fictional character named "Randy Candy" appears for approximately thirty seconds. It is not an advertisement, proposes no commercial transaction, and does not use the words "Randy Candy" to identify the source of any good or service. <u>See</u> <u>United Foods</u>, 533 U.S. at 409; <u>Bolger</u>, 463 U.S. at 66-67. NBC's use of "Randy Candy" is noncommercial speech, plain and simple, sharing no "real nexus" with the sale, distribution, or advertising of goods and services. <u>Radiance</u>, 786 F.3d at 324; <u>see, e.g.</u>, <u>Newton v.</u>

---

[4] In addition to the "Drive-Thru Window" sketch, Plaintiff also bases his claim on a post from <i>SNL</i>'s Twitter account, stating (in full), "Whaddup, it's Randy Candy. #SNL," and including a behind-the-scenes photo of the Randy Candy character. <u>See</u> Compl. ¶ 204. That tweet was cross-posted on other <i>SNL</i>-affiliated social media accounts. <u>See</u> Compl. ¶ 179. Even if this tweet were considered promotional in nature, it would be incidental to the publication of the noncommercial "Drive-Thru Window" sketch and therefore subject to the same protections. <u>See</u>, <u>e.g.</u>, <u>Lane v. Random House, Inc.</u>, 985 F. Supp. 141, 152 (D.D.C. 1995) (where "promotional material relates to a speech product that is itself protected," it should be treated as noncommercial speech); <u>Page v. Something Weird Video</u>, 960 F. Supp. 1438, 1443 (C.D. Cal. 1996) (same). As such, the analysis throughout this memorandum applies equally to the social media posts and the sketch, unless otherwise noted.

Thomason, 22 F.3d 1455, 1461 (9th Cir. 1994) (use of fictional character's name in television series did not constitute use of name "for a commercial purpose").

In the Complaint, Plaintiff vaguely alleges a "financial partnership" between NBC and Burger King pursuant to which Burger King paid to have its logo and products appear in the "Drive-Thru Window" sketch. (Compl. ¶ 163); see id. at ¶¶ 148-72. Assuming (without admitting) the truth of these allegations, "Drive-Thru Window" would remain non-commercial speech. See Riley v. Nat'l Federation of the Blind of North Carolina, 487 U.S. 781, 796 (1988) (where commercial and expressive parts of speech are "inextricably intertwined," courts should not "parcel out" protected and unprotected expression); see, e.g., Transportation Alternatives, Inc. v. City of New York, 340 F.3d 72, 78 (2d Cir. 2003) (that an organization "receives commercial support for its event and displays the logos of sponsors in some of its promotional literature" did not render event commercial speech); In re NCAA Student-Athlete Name & Likeness Litig., 37 F. Supp. 3d 1126 (N.D. Cal. 2014) (broadcast of athletic events not commercial speech despite facts that broadcasts "feature corporate logos and sponsors during the course of play"); accord Radiance, 786 F.3d at 332 (solicitation of donations and sponsorships on website featuring mark did not render speech commercial). Accordingly, Plaintiff cannot satisfy the "in connection with" requirement, necessitating dismissal of the Infringement Claims.

10

### b. Plaintiff Fails to Allege Likelihood of Confusion Between RANDY CANDY apparel and "Drive-Thru Window"

"[T]rademark infringement protects only against mistaken purchasing decisions and not against confusion generally." Radiance, 786 F.3d at 324 (internal quotation marks and citation omitted). A likelihood of confusion thus exists only "if the defendant's actual practice is likely to produce confusion in the minds of consumers *about the origin of the goods or services in question*." George & Co. LLC v. Imagination Entm't Ltd., 575 F.3d 383, 393 (4th Cir. 2009) (emphasis added). Where a plaintiff cannot plausibly allege likelihood of confusion, a motion to dismiss should be granted. See, e.g., Fortres Grand Corp. v. Warner Bros Entm't Inc., 763 F.3d 696, 705 (7th Cir. 2014); Kassa v. Detroit Metro Convention & Visitors Bureau, 672 F. Appx. 575, 576 (6th Cir. 2017) (Mem.); Baltimore Sports & Soc. Club, Inc. v. Sport & Soc., LLC, 228 F. Supp. 3d 544, 553 (D. Md. 2017).

In the Fourth Circuit, the likelihood of confusion analysis is guided by nine non-exclusive considerations, "[n]ot all of [which] are . . . relevant in any given case … (1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the similarity of advertising used by the markholders; (6) the defendant's intent; (7) actual confusion; (8) the quality of the defendant's product; and (9) the sophistication of the consuming public." George & Co. LLC, 575 F.3d at 393.

11

Here, the third factor – the *non*-similarity of the goods or services that the marks identify – overwhelms any possibility of confusion.  When an infringement claim arises from use in a creative work, the proper comparison is "between the senior user's [goods or services] and the junior user's creative work—not any fictional product therein." Fortres Grand 763 F.3d at 702 (comparing plaintiff's software to defendant's film, not to fictional software mentioned in it); see also Davis v. Walt Disney Co., 430 F.3d 901, 904 (8th Cir. 2005) (comparing plaintiff's materials to defendant's film, not to fictional company portrayed in film).

Plaintiff applies the RANDY CANDY mark to apparel; NBC used "Randy Candy" as the name of a character in a comedy sketch.  The relevant comparison, therefore, is between Plaintiff's RANDY CANDY apparel and NBC's "Drive-Thru Window" *SNL* sketch.  Of course, comedy sketches and apparel are not identical products, nor are they "sufficiently related to cause consumers to believe they derive from the same source."  Valador, Inc. v. HTC Corp., 241 F. Supp. 3d 650, 665 (E.D. Va. 2017) (internal quotation marks omitted).  Moreover, Plaintiff has not and cannot allege that NBC sells any merchandise, let alone apparel, that bears the RANDY CANDY mark.[5]  See Fortres Grand, 763 F.3d at 703-04 (in granting motion to dismiss, noting that defendant "does not sell any movie merchandise similar to [plaintiff's] software which also bears the allegedly infringing mark").

---

[5] Plaintiff's manipulation of the "Design Your Own" feature on NBC's NBC Shop website (Compl. ¶¶ 287-91) does not constitute a use *by NBC* of "Randy Candy" on apparel.

The second factor – the dissimilarity of the two marks to consumers – also militates strongly against a finding of likelihood of confusion. While both uses employ the phrase "Randy Candy," their "appearances in the marketplace" are entirely different. CareFirst of Maryland, Inc. v. First Care, P.C., 434 F.3d 263, 271; see id. (pairing of mark with other material lessens confusion that might otherwise be caused by the textual similarity between two marks). In Plaintiff's apparel, the RANDY CANDY mark appears in a bubble-script font, most often accompanied by an illustration of a clean-cut boy with short, brown hair, a wide, mischievous smile, and a bowtie. See Compl. Ex. A. In "Drive-Thru Window," by contrast, the "Randy Candy" character is a full-grown and portly man, with bleach-blonde, shoulder-length hair, sunglasses, and a cartoonish pinstripe suit. (NMF, ECF Doc. #23); see Newton, 22 F.3d at 1462 (in Lanham Act claim arising from character's name identical to plaintiff's, similarity-of-marks factor weighed against plaintiff because "[his] 'persona' is very different from that of the fictional character"). In the sketch, the phrase never even appears in textual form.

Other likelihood of confusion factors underscore the total implausibility of Plaintiff's infringement claim[6] in that they contain numerous conclusory and implausible allegations. See generally Compl. ¶¶ 608-85. Accordingly, there can be no likelihood of confusion on any set of facts and the Infringement Claims should be dismissed.

_____

[6] Plaintiff relies on unsupported conclusory assertions of an "avalanche of actual evidence" along with a single YouTube comment in support of the actual confusion factor. (Compl. ¶¶ 176, 653-54.) Trademark law does not protect against "confusion generally." Radiance, 786 F.3d at 324.

13

### c. The First Amendment Bars the Infringement Claims

Apart from the First Amendment's incorporation into the "in connection with" requirement, that Amendment also provides NBC a defense to the Infringement Claims because "Drive-Thru Window" is an expressive work that used "Randy Candy" in an artistically relevant and non-source-identifying manner.

In <u>Rogers v. Grimaldi</u>, the Second Circuit held that the First Amendment requires the Lanham Act to be construed as inapplicable to the use of marks in expressive works, as long as the defendant's use is "artistically relevant" to the work and not "explicitly misleading" as to its source or content.[7] 875 F.2d 994, 999 (2d Cir. 1989). In addition to the Second Circuit, at least four other courts of appeal have explicitly adopted <u>Rogers</u> when faced with alleged trademark infringement in expressive works. <u>See</u> <u>Westchester Media v. PRL USA Holdings, Inc.</u>, 214 F.3d 658, 664 (5th Cir. 2000); <u>ETW Corp. v. Jireh Pub., Inc.</u>, 332 F.3d 915, 926–27 (6th Cir. 2003); <u>Mattel, Inc. v. MCA Records, Inc.</u>, 296 F.3d 894, 902 (9th Cir. 2002); <u>University of Alabama Bd. Of Trustees v. New Life Art, Inc.</u>, 683 F.3d 1266, 1277 (11th Cir. 2012) (noting <u>Rogers</u> is "the landmark case for balancing trademark and First Amendment rights"). While the Fourth Circuit has not explicitly adopted the <u>Rogers</u> test, in <u>Radiance</u> it endorsed the test as applied to the titles of works, and it extensively cited <u>Rogers'</u> discussion of the First Amendment in

---

[7] The <u>Rogers</u> court applied this test to the use of a trademark in a movie title, but courts have extended it to the content of other expressive works as well. <u>See</u> <u>Cliffs Notes, Inc. v. Bantam Doubleday Dell Publ'g Group, Inc.</u>, 886 F.2d 490, 495 (2d Cir.1989).

14

interpreting the "in connection with" requirement.  See <u>Radiance</u>, 786 F.3d at 322-29.

NBC respectfully submits that this Court should apply the <u>Rogers</u> test.

In applying the test, "[t]he threshold for artistic relevance is purposely low and will be satisfied unless the use 'has *no* artistic relevance to the underlying work *whatsoever*.'" <u>Louis Vuitton Malletier S.A. v. Warner Bros. Entm't Inc.</u>, 868 F. Supp. 2d 172, 178 (S.D.N.Y. 2012).  As to the "explicitly misleading" element, courts require more than "the mere use of a trademark alone," <u>E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.</u>, 547 F.3d 1095, 1100 (9th Cir. 2008); rather, "the defendant's work must make some affirmative statement of the plaintiff's sponsorship or endorsement." <u>Dillinger, LLC v. Electronic Arts Inc.</u>, No. 1:09–cv–1236, 2011 WL 2457678, at *6 (S.D. Ind. June 16, 2011).  Application of <u>Rogers</u> is appropriate at the Rule 12(b)(6) stage. <u>See</u>, <u>e.g.</u>, <u>Louis Vuitton Malletier</u>, 868 F. Supp.2d 172, 183-84 (S.D.N.Y. 2012) (dismissing claim arising from use of Louis Vuitton bag in film); <u>see also</u> <u>Brown v. Electronic Arts, Inc.</u>, 724 F.3d 1235 (9th Cir. 2013); <u>Rebellion Developments Ltd. V. Stardock Entertainment, Inc.</u>, No. 12-12805, 2013 WL 1944888 (E.D. Mich. May 9, 2013).

Plaintiff's Infringement Claims fail the <u>Rogers</u> test as a matter of law.  For comedic effect, "Drive-Thru Window" deploys a series of eccentric, oddly named, and outlandishly dressed characters, all in the same stretch limo that pulls up to a fast-food restaurant, including "Michael Tangelo," "Linda Tomorrow," and "Real Jeff." (NMF, ECF Doc. #23.) The name "Randy Candy" extends and amplifies this effect.  At

15

minimum, the artistic relevance of this use is "above zero," clearing the "purposely low" bar set by Rogers. E.S.S. Entm't 2000, 547 F.3d at 1100; Louis Vuitton, 868 F. Supp. 2d at 178. The Infringement Claims fail Rogers' second prong, too, as "Drive-Thru Window" makes no affirmative statement of Plaintiff's sponsorship or endorsement of the sketch, *SNL*, or NBC.

Under Rogers, the First Amendment bars the Infringement Claims.

### 2. Plaintiff's False Advertising Claim Fails Because Defendants did not Misrepresent Plaintiff's Goods or Services

Plaintiff also alleges a "False Advertising" claim under 15 U.S.C. § 1125(a), and some of his allegations recite the statutory predicate to that cause of action. (Compl. ¶¶ 737-38.) But in order to state a claim for false advertising, a plaintiff must allege, *inter alia*, that "the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product." Design Resources, Inc. v. Leather Industries of America, 789 F.3d 495, 501 (4th Cir. 2015). The accused statement must be a "specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact." Id. at 502 (internal quotation marks and citation omitted). Plaintiff has not and cannot allege *any* false or misleading description of fact about NBC's own "product" (i.e. the sketch or *SNL*) or anyone else's. Accordingly, this claim fails as a matter of law.

### 3. Plaintiff's Trademark Dilution Claim Fails Because RANDY CANDY is not Famous

Plaintiff next asserts a claim for trademark dilution under 15 U.S.C. § 1125(c). (Compl. ¶¶ 746-54.)  To state a dilution claim, a plaintiff must allege, *inter alia*, that "the plaintiff owns a famous mark that is distinctive" Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC, 507 F.3d 252, 264–65 (4th Cir. 2007).  The Lanham Act's anti-dilution provisions explicitly state that "[a]ny noncommercial use of a mark" is non-actionable as trademark dilution. 15 U.S.C. § 1125(c)(3).

Plaintiff's dilution claim fails out of the gate because the RANDY CANDY mark is not "famous," and Plaintiff fails to plausibly allege otherwise.  As discussed above, because "Drive-Thru Window" makes only noncommercial use of the name "Randy Candy," the statutory noncommercial exclusion also bars the claim.[8]

For purposes of a dilution claim, "a mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner."  15 U.S.C. § 1125(c)(2).  "Because protection from dilution comes close to being a 'right in gross,' the [Lanham Act] extends dilution protection only to those whose mark is a 'household name.'"  Rosetta Stone Ltd. v. Google, Inc., 676 F.3d 144 (4th Cir. 2012).  "This is not an easy standard to achieve."

---

[8] As discussed in Section IV(B)(1)(a), *supra*, NBC's use of "Randy Candy" was entirely noncommercial because it used the phrase as the name of a fictional character in an expressive work that proposed no commercial transaction.  As a result, even if the RANDY CANDY mark were famous (it is not), Plaintiff's dilution claim would fail under the noncommercial use exclusion. Radiance, 786 F.3d at 331 (citing Lamparello, 420 F.3d 309, 313 (4th Cir. 2005)); see 15 U.S.C. § 1125(c)(3).

17

*Id.*; *see* <u>Coach Servs., Inc. v. Triumph Learning LLC</u>, 668 F.3d 1356, 1373 (Fed. Cir. 2012) ("It is well-established that dilution fame is difficult to prove."); *McCarthy on Trademarks and Unfair Competition,* § 24:104 at 24–286, 24–293 (noting that fame is "a difficult and demanding requirement" and that, although "all 'trademarks' are 'distinctive'—very few are 'famous'").

Applying this definition, courts have deemed famous such brands as Nike, Pepsi, and Nissan. <u>Nike, Inc. v. Nikepal Int'l, Inc.</u>, No. 2:05-CV-1468-GEB-JFM, 2007 WL 2782030 (E.D.Cal. Sept. 18, 2007); <u>Pepsico, Inc. v. # 1 Wholesale, LLC</u>, No. 07-CV-367, 2007 WL 2142294 (N.D.Ga. 2007); <u>Nissan Motor Co., Ltd. v. Nissan Computer Corp.</u>, No. CV-99-12980 DDP, 2007 WL 4938219 (C.D.Cal. 2007). On the other hand, courts have deemed "not famous" such well-known marks as "Coach" for handbags, the University of Texas's "Longhorn" logo, and the Maker's Mark trade dress of dripping red wax atop a whiskey bottle. <u>See</u> <u>Coach Servs., Inc. v. Triumph Learning LLC</u>, 668 F.3d 1356, 1373 (Fed. Cir. 2012); <u>Bd. of Regents, Univ. of Texas Sys. ex rel. Univ. of Texas at Austin v. KST Elec., Ltd.</u>, 550 F. Supp. 2d 657, 679 (W.D. Tex. 2008); <u>Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.</u>, 703 F. Supp. 2d 671, 698 (W.D. Ky. 2010), *aff'd*, 679 F.3d 410 (6th Cir. 2012).

Putting aside his frequent use of the conclusory label "famous" in the Complaint (<u>see</u> Compl. ¶¶ 3, 35, 65, 98, 364, 487, 749-53, 768), Plaintiff has made no plausible allegations that the mark RANDY CANDY is "widely recognized by the general consuming public of the United States" as designating the source of his line of t-shirts

18

and underwear. And he cannot do so, as it is beyond dispute that RANDY CANDY is not among the "very few" trademarks that are so pervasively recognized as to warrant broad dilution protection. Plaintiff's dilution claim should therefore be dismissed. See, e.g., <u>Field of Screams, LLC v. Olney Boys & Girls Cmty. Sports Ass'n</u>, No. CIV.A. DKC 10-0327, 2011 WL 890501, at *10 (D. Md. Mar. 14, 2011) (dismissing federal dilution claim on Rule 12(b)(6) motion).

### 4. Plaintiff's Unjust Enrichment Claim Fails Because Plaintiff Fails to Plead a Benefit Conferred to Defendants

Plaintiff alleges that his unjust enrichment claim is brought "under the laws of the United States" for "federal Unjust Enrichment in violation of Section 43(a)(1) of the Lanham Act, 15 U.S.C. § 1125(a)(1)." (Compl. ¶ 780.) It is unclear how this claim differs from Plaintiff's other Section 43(a) Lanham Act claims and Defendants are unaware of any authority supporting a claim for "federal unjust enrichment.[9]" Accordingly, for the reasons stated in Section IV(B)(1), *supra*, relative to Plaintiff's Section 43(a) claims, Plaintiff's unjust enrichment claim should be dismissed.

### 5. Plaintiff's Common Law Infringement and Common Law Unfair Competition Claims Fail

Plaintiff also alleges non-Lanham Act claims for trademark infringement and unfair competition under North Carolina common law, which are analyzed similarly to a

---

[99] Even under North Carolina law, Plaintiff's unjust enrichment (Compl. ¶¶ 782-84) claim would fail because the Complaint does not allege that Plaintiff conferred any benefit on Defendants. <u>See</u> <u>Primerica Life Ins. Co. v. James Massengill & Sons Const. Co.</u>, 211 N.C. App. 252, 259–60, 712 S.E.2d 670, 677 (2011).

claim brought under the Lanham Act. See N.C. Gen. Stat. § 80–1.1; Superior Performers, Inc. v. Family First Life, LLC, No. 1:14-CV-283, 2014 WL 7338923, at *5 (M.D.N.C. Dec. 22, 2014) (citations omitted); Georgia Pac. Consumer Prod., LP v. Von Drehle Corp., 618 F.3d 441, 449 (4th Cir. 2010); see also AMP. Inc. v. Foy, 540 F.2d 1181, 1188 (4th Cir.1976).

For the reasons stated in Sections IV(B)(1)-(3), *supra*, relative to Plaintiff's Infringement Claims, Plaintiff's common law trademark infringement and common law unfair competition claims should be dismissed.

### 6. Plaintiff's Chapter 75 Claim Fails Because Defendants' Conduct Is Not Unfair or Deceptive

Plaintiff alleges that his North Carolina's Unfair and Deceptive Trade Practices Act (the "NCUDTPA") claim is also premised on the same conduct alleged in support of his other claims for trademark infringement. Trademark infringement under the Lanham Act does not amount to a *per se* violation of the NCUDTPA. See Lyons Partnership, L.P. v. Morris Costumes, Inc., 243 F.3d 789, 804-05 (4th Cir. 2001).

To prevail on a NCUDTPA claim, a plaintiff must plausibly allege that defendants committed an unfair or deceptive act or practice in or affecting commerce. See First Atl. Mgmt. Corp. v. Dunlea Realty Co., 507 S.E.2d 56, 63 (N.C. App. 1998); Huff v. Autos Unlimited, 477 S.E.2d 86, 88 (N.C. App. 1996). Under the NCUDTPA, an act or practice is unfair if it is "immoral, unethical, oppressive, unscrupulous, or substantially

20

injurious to customers." <u>See e.g., Edwards v. West</u>, 495 S.E.2d 920, 923 (N.C. App. 1998).

Here, Plaintiff alleges that Defendants' conduct – airing a comedic sketch on *SNL* – is "immoral, unethical, oppressive, unscrupulous, and offends the ethos of the marketplace." (Compl. ¶ 809.) This type of allegation is nothing more than the very "threadbare recitals of the elements of a cause of action" that <u>Twombly</u> held to be insufficient. <u>Twombly</u>, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007). Plaintiff points to no facts in support of this support of this conclusory allegation. Accordingly, Plaintiff's claim for violations of the NCUDTPA should be dismissed.

### 7. Plaintiff's Libel p*er se* Claim Fails Because Plaintiff Fails to Allege a False Publication made by Defendants of or Concerning Plaintiff

Plaintiff next alleges a claim for libel *per se* under North Carolina law. Libel per se is a publication which, when considered alone without explanatory circumstances: (1) charges that a person has committed an infamous crime; (2) charges a person with having an infectious disease; (3) tends to impeach a person in that person's trade or profession; or (4) otherwise tends to subject one to ridicule, contempt or disgrace. <u>Nucor Corp. v. Prudential Equity Grp.</u>, LLC, 189 N.C. App. 731, 736, 659 S.E.2d 483, 486 (2008) (citations omitted). To be libelous per se, defamatory words must be susceptible to but one meaning and of such nature that the court can presume as a matter of law that they tend to disgrace and degrade the party or hold him up to public hatred, contempt or ridicule, or cause him to be shunned and avoided. <u>Nucor</u>, 189 N.C. App. at 736.

21

It is entirely unclear what written statements Plaintiff relies on to support this claim. Moreover, nothing in that sketch is "of or concerning" Plaintiff as required by North Carolina law – as Mr. Casper is never mentioned, referenced, or identified in the sketch. Further, nothing in the sketch can possibly be construed as being a "false statement." To the extent Plaintiff is referring to actual written statements, Plaintiff fails to sufficiently identify the statements or how the statements are "of or concerning" Plaintiff. Plaintiff's libel *per se* claim should be dismissed.

> **8. Plaintiff's Intentional Infliction of Emotional Distress Claim Fails Because Plaintiff Fails to Plead Sufficient Extreme and Outrageous Conduct by Defendants**

Plaintiff also alleges a claim for intentional infliction of emotional distress ("IIED"). Under North Carolina law, to make a prima facie case for IIED, Plaintiff must show "(1) extreme and outrageous conduct by the defendant (2) which is intended to and does in fact cause (3) severe emotional distress." Waddle v. Sparks, 331 N.C. 73, 82, 414 S.E.2d 22, 27 (1992). Conduct is extreme and outrageous only when it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Hogan v. Forsyth Country Club Co., 79 N.C.App. 483, 493, 340 S.E.2d 116, 123 (1986).

Plaintiff contends, without explanation, that Defendants somehow subjected Plaintiff to "extreme and outrageous conduct" including hate speech, bigotry, homophobia, and xenophobia. (Compl. ¶ 831.) Plaintiff does not, however, explain how Defendants engaged in conduct constituting any of the aforementioned categories.

22

Moreover, to the extent Plaintiff's claim is premised on the assertion that the *SNL* sketch in question allegedly contained the dialogue "[w]e hate Randy Candy," such dialogue cannot support a claim of intentional infliction of emotional distress because (1) it is not targeted at Plaintiff, (2) because it is implausible that Plaintiff could have watched the *SNL* sketch in question then suffered severe emotional distress, and (3) because such a statement – even if it were made – simply is not "extreme and outrageous" under North Carolina law. See e.g. Johnson v. Bollinger, 86 N.C.App. 1, 3 (1987) (holding verbal threats by armed animal warden not extreme and outrageous conduct). Accordingly, Plaintiff's claim for IIED should be dismissed.

### 9. Plaintiff's Remaining Claims Should be Dismissed as they are not Valid Claims in North Carolina

Plaintiff's remaining claims relating to (1) expenses of litigation, (2) conditions precedent, and (3) jury demand should all be dismissed as none are cognizable claims under North Carolina law. Plaintiff's claim for expenses of litigation includes requests that the Court award him: (1) costs of the action pursuant to N.C. Gen. Stat. § 6-18, (2) attorney's fees pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692(a)(3)[10] and N.C. Gen. Stat. § 75-16.1, (3) punitive damages, (4) compensatory damages, and (5) additional unknown damages. Because Plaintiff's other claims fail as a matter of law, there can be no claim to form the basis for a request for attorneys' fees.

With respect to Plaintiff's purported claim for conditions precedent, Plaintiff alleges that "all conditions precedent have been performed or have occurred, or have

---

[10] This statute has absolutely no applicability to this case.

been prevented from occurring due to Defendants' actions." (Compl. ¶ 856.) Defendants are aware of no authority indicating conditions precedent is an affirmative claim for relief.

Finally, although Defendants recognize that Plaintiff is entitled to request a jury trial, such a demand is not an independent cause of action and should be dismissed.

## V.   <u>CONCLUSION</u>

Based on the foregoing, Plaintiff's Complaint should be dismissed pursuant to Rules 8(a)(2) and 12(b)(6) in its entirety.

Respectfully submitted this the 8th day of November, 2017.

<div style="margin-left:40%">

/s/ *Alan B. Felts*

Jeffrey S. Southerland
N.C. State Bar No. 34221
jsoutherland@tuggleduggins.com
Alan B. Felts
NC State Bar No. 42826
afelts@tuggleduggins.com
*Attorneys for Defendants*

</div>

OF COUNSEL:

TUGGLE DUGGINS P.A.
P.O. Box 2888
Greensboro, NC 27402
Telephone:  336-378-1431
Facsimile:  336-274-6590

24

# CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that the foregoing motion complies with Local Rule 7.3(d)(1), and that it has 6221 words, excluding the case caption, any table of contents, any table of authorities, and any required certificates of counsel, as determined by the word count function of the word-processing system used to prepare this motion.

*/s/ Alan B. Felts*
Alan B. Felts
*Attorney for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was this date electronically filed with the Court using the Court's CM/ECF system, which will send notification of filing, and that a copy was served by U.S. Mail, postage prepaid addressed as follows:

    Craven Randall Casper
    P.O. Box 2311
    Chapel Hill, NC 27515

This the 8th day of November, 2017.

                                    */s/ Alan B. Felts*
                                    Alan B. Felts
                                    *Attorney for Defendants*

26